## Commonwealth v. Fleckenstein

*Geoffrey P. Wozney* and *Bernard J. Hessley,* for plaintiff.

*Mervine & Calderwood,* for defendant.

WOLFE, P. J., March 19, 1974.—This action is before us on defendant-wife's preliminary objections filed after defendant entered her appearance and answered the complaint. The objections question the proper statute upon which plaintiff bases its complaint seeking reimbursement of $25,565.39 for inpatient care of defendant-husband (now deceased)

from November 17, 1966, to December 31, 1972, at the Warren State Hospital.

Plaintiff argues that defendant-wife, by answering its complaint, has waived her right to now preliminarily object since the pleadings are closed.

Defendant replies, initially, she was not represented by counsel after service of the complaint upon her and thus not acquainted with the Pennsylvania Rules of Civil Procedure and a great injustice would be perfected if plaintiff is permitted to recover its total amount of maintenance and support in a lump sum expended on behalf of her husband.

At the time of argument on the motion, there was evidence defendant had consulted two attorneys prior to filing her answer but, for reasons not explained, defendant elected to represent herself until retaining counsel who has now filed the preliminary objections.

We do not think filing preliminary objections after answering a complaint precludes the pleader in this instance to advance the defense of failure to state a claim upon which relief can be granted under Rule 1032(1) of Pennsylvania Rules of Civil Procedure. Permitting the pleader to preliminarily object after answering, in effect, suspends the operation of the answer if, indeed, it does not retract it. In any event, the net result is to open the pleadings after issue has been joined and we think this is improper; however, in Daugherty v. Treires, 26 D. & C. 2d 517 (1961), the court treated "preliminary objections" in the nature of a demurrer to plaintiff's reply to new matter asking for judgment as a motion for judgment on the pleadings under Pa. R. C. P. 1034(a).

In Eckels v. Firestone Products Co., Inc., 8 D. & C. 2d 78 (1956), a preliminary objection requesting judgment and dismissal of a complaint in trespass was considered as a motion to strike off the complaint under Pa. R. C. P. 1017, since judgment on the plead-

ings can only be considered after the pleadings are closed.

We see no valid objection in treating defendant's preliminary objections in this case as a motion for judgment on the pleadings. This treatment of the pleading does not prejudice the plaintiff as, in a proper case, Rule 1034(b) permits the court to enter such judgment or order as shall be proper on the pleadings which, we interpret to mean the court may grant plaintiff an opportunity to amend the complaint in an appropriate case: Lindenmuth v. Mt. Carmel Blouse Corp., 28 Northumb. 187 (1956); Ryan and Kennedy, Inc. v. Reardon, 62 Lack. Jur. 65 (1960); Medusa Portland Cement Co. v. Marion Coal & Supply Co., 204 Pa. Superior Ct. 5, 201 A. 2d 285 (1964). See Goodrich-Amram 1973 Supplement, binders 1 and 2, page 395.

Thus, we conclude defendant's preliminary objections shall be treated as a motion for judgment on the pleadings and, as so viewed in light of our final ruling, we will permit plaintiff to amend its complaint.

Turning to the merits, the issue is the interpretation of three acts, viz:

The Support Law of June 24, 1937, P. L. 2045, 62 PS §1971; The Act of June 1, 1915, P. L. 661, 71 PS §1781, placing liability for support of inmates in State institutions, and The Mental Health and Mental Retardation Act of October 20, 1966, P. L. 96, (no. 350), 50 PS §4101 et seq., providing for the support, care and those liable therefore of inmates in mental institutions.

Plaintiff's action is brought pursuant to The Support Law of June 24, 1937, sec. 1974, 62 PS §1974. This section subjects the property, both real and personal, of any person for his support, maintenance, assistance and burial and of such person's spouse and unemancipated minor children when incurred *by any public body or public agency,* if such property

was owned during the time such expenses were incurred or if a right or cause of action existed during the times such expenses were incurred from which the ownership of such property resulted.

Plaintiff alleges the Department of Public Welfare of the Commonwealth of Pennsylvania granted aid for the maintenance and hospital care of defendant, Henry J. Fleckenstein, over the said period of time at the said State hospital and have requested in the past for defendants to pay or reimburse the Commonwealth, or to sign a reimbursement agreement for the amount owing, which defendants refuse to do. Thus, the Commonwealth does not seek recovery on any express contract of reimbursement but rather under the general support law, supra.

Defendant-wife argues the proper statute that specifically applies in cases of this instance is the Act of June 1, 1915, P. L. 661, sec. 4, 71 PS §1784, which permits the court of the county of the residence of any inmate of a State-owned mental hospital, upon application of the Department of Justice, to make an order for the payment of maintenance against the proper person therein identified in relation by blood or marriage to the inmate. This act has been replaced insofar as it is inconsistent with the Mental Health Act of June 12, 1951, P. L. 533, sec. 1001, now the Mental Health and Mental Retardation Act of 1966, which, under section 502, 50 PS §4502, imposes liability, "upon any person owing a legal duty to support the person admitted, committed or otherwise receiving services or benefits under this act."

Both acts, whether for general public assistance or for care as a mental patient in a State-owned institution require the court to fix the amount of support based upon the financial ability of the designated person to pay; however, The Support Law of June 24, 1937, P. L. 2045 (no. 397), sec. 4, 62 PS §1974, permits

"*Any public body or public agency* [to] sue the owner of such property for moneys so expended and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children." (Italics supplied.)

This section becomes critical in the instant case for the reason no support order was set at the time decedent initially entered the State facility nor during his stay; further, decedent died totally insolvent and the only asset defendant-wife enjoys is her independent home.

Section 4(b) of The Support Law, June 24, 1937, P. L. 2040 (no. 397), 62 PS §1974(b) grants any public body or public agency a claim for support, maintenance or assistance against the real or personal estate of a deceased person as other debts of a decedent to be recovered in the same manner. However, no lump sum recovery is permitted against the spouse of such decedent receiving the facility support.

The Commonwealth asserts it has an option of which act to activate for past support of an inmate in a State facility. With this, we disagree. The legislature has made it clear which act is to be applied in this instance. A general alluding to the expenditures by a "public body or public agency" in The Support Law, Act of June 24, 1937, cannot prevail over the specific direction and remedies of the Act of June 1, 1915.

We find authority that The Support Law and the Public Assistance Law establish a general system of

administration to the needy, poor and indigent and are to be constructed in pari materia under the Statutory Construction Act, sec. 62, of the Act of May 28, 1937, P. L. 1019, art. IV, 46 PS §562, as relating to the same persons or things or the same class of persons or things: (Commonwealth v. Bell, 35 D. & C. 146 (1939); Blum's Estate, 38 D. & C. 594 (1940) ), but we find no support for the Commonwealth's position it is entitled to recovery for past support rendered an inmate in a State institution against those persons enumerated under section 3 of The Support Act; on the contrary, the cases we find infer the opposite and conclude the Act of June 1, 1915, as affected by the Mental Health and Mental Retardation Act of 1966, sec. 505, controls: Walter's Case, 278 Pa. 421 (1924); Brusbard's Estate, 34 D. & C. 107 (1938); Estate of Elizabeth Hohenshieldt, dec'd., 105 Pa. Superior Ct. 18 (1932); Erny's Estate, 337 Pa. 542 (1940).

Section 501 of the Mental Health and Mental Retardation Act places liability on the mentally disabled persons receiving maintenance in a State institution. Section 502 of that act imposes liability on any person owing a legal duty to support the person committed when that person is unable, financially, to discharge his own obligations under section 501.

We, therefore, hold in this case that the Commonwealth has no option to select its remedy but is confined to the Act of June 1, 1915, controlling support of inmates in State institutions.

Since the parties here acknowledge there was no contract of agreement to pay or reimburse the Commonwealth for the support and maintenance received, we are confronted with the retroactive issue involved for past support. In Commonwealth v. Weber, 71 D. & C. 546 (1950), the court denied retroactivity of a support order for services rendered prior to the entry

of the order; this, notwithstanding, whether the order was entered in Quarter Sessions or the Court of Common Pleas.

"It is well established that, in cases involving support in quarter sessions court, orders can only be made for future support and maintenance, and not for past support: In Re: Proceedings Against Forcey, 99 Pa. Superior Ct. 293, 295 (1930); In the Matter of Lucy Jones, 96 Pa. Superior Ct. 480, 487 (1929); Keller v. Commonwealth, 71 Pa. 413 (1872).

"We recognize that we are here dealing with the Act of June 1, 1915, supra, which applies to indigent insane inmates of hospitals maintained in whole, or in part, by the Commonwealth, but, in construing this act, we must not overlook the long established rule of the quarter sessions, that support orders are only prospective, and it is reasonable to believe that the legislature did not intend that a departure should be made from this well-established rule by the Act of 1915.

"It has been held that a designated relative, under section 3 of the Act of June 1, 1915, supra, is liable to the Commonwealth for past support of an insane inmate in a state hospital (Harnish's Estate, 268 Pa. 128 (1920) ), and some courts have held that this liability could be enforced by an order obtained under section 4 of the act. It has so held by Judge Henninger of Lehigh County, in In re Whittwer, 31 D. & C. 102 (1937), but in a later case, Com. v. Groller, 41 D. & C. 366 (1941), this same judge had this to say, on page 368:

" 'There is no doubt that, so far as future maintenance is concerned, an order can be made only upon strict compliance with section 4, 71 PS §1784, and that, in proceedings *under that section, no order*

*may be made for past maintenance.'* (Italics supplied)."

The court concluded that an action in assumpsit is a proper remedy for the recovery of past maintenance under the Act of 1950 and that act applies only to future maintenance and cannot be made to cover past maintenance.

We would only add to the holding of Commonwealth v. Weber, section 56 of the Statutory Construction Act, May 28, 1937, 46 PS §556, that "no law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." We do not conclude, however, the Commonwealth is precluded from seeking recovery in an action of assumpsit under the theory of an implied contract to repay the amount expended against the estate of decedent: Walter's Case, 278 Pa. 421, October 2, 1923. In re Hoffmann, 258 Pa. 343 April 23, 1917 Commonwealth v. Baum, 250 Pa. 469 May 11, 1915. However, we think any action against defendant, Harriet B. Fleckenstein, must be prospective only and based upon her ability to pay under the Act.

In In re Hoffmann, 258 Pa. 343 (1917), the court permitted, recovery for an amount expended by the Commonwealth for an inmate at the Warren State Hospital at Warren under the Act of June 1, 1915, P. L. 661. The court interpreted the act as permitting the collection by the Commonwealth of the costs of maintenance of persons in institutions supported in whole or in part by the State and empowered the court of common pleas of the county of the residence of any inmate of a State asylum, upon application to the Attorney General, to make an order for the payment of maintenance against the trustee or guardian in charge of the estate *or against any person responsible for the support of such inmate.*

The same holding was made in Commonwealth v. Baum, 250 Pa. 469 (1950). Notwithstanding, we have found no cases that permit a retroactive recovery against one owing a duty of support. In Commonwealth v. Groller, 41 D. & C. 366 (1941) the court stated:

"There is no doubt that, so far as future maintenance is concerned, an order can be made only upon strict compliance with section 4, 71 PS §1784, and that, in proceedings under that section, no order may be made for past maintenance."

In Erny's Estate, 337 Pa. 542, it was held that section 3 of the Act of June 1, 1915, P.L. 661, creates a statutory obligation on the part of the named relatives to reimburse the Commonwealth and that this obligation now is a quasi-contractural one and can be enforced as any other quasi-contract action. However, the court used interesting language as pertaining to retroactivity of such orders against relatives:

"At common law, [the] mere fact that an adult demented person is incapable of caring for himself raises no obligation on his parents' part to support him except possibly where the child was living with them and was incompetent when reaching majority: LOYALSOCK TWP. OVERSEERS v. ELDRED TWP. OVERSEERS, 154 Pa. 358; GAYDOS v. DOMABYL, 301 Pa. 523, 534. Consequently there was no duty to reimburse the authorities for such maintenance. The obligation of a parent to maintain an indigent adult child and the consequent liability to reimburse the authorities for such maintenance being purely statutory and in derogation of the common law. (HARNISH'S ESTATE, 268 Pa. 128, 131; BOLES'S ESTATE, 316 Pa. 179, 182), and being imposed, as they are, irrespective of the intention of the parties, are clearly quasi-contractural and therefore not within the phrase

limiting debts 'founded upon any lending or contract without specialty'."

In Commonwealth v. Fogelman, 30 D. & C. 2d 405 (1963), on a suit by the Commonwealth for reimbursement for the maintenance of defendant's son confined as a patient in the Allentown State Hospital, the court concluded the ability to pay is still a condition precedent to collect from a willing living relative of the mental patient and that the Mental Health Act (section 1001 of the Act of June 12, 1951, P.L. 533, 50 PS §1620) now the Mental Health and Mental Retardation Act of 1966, establishing liability, is, nonetheless, based upon the ability of the relative to pay as a condition precedent for reimbursement.

"This interpretation of the Mental Health Act is fortified by the provisions of subparagraph (f) above cited, added to the Mental Health Act by the amending Act of December 10, 1959, P. L. 1743. This subparagraph limits the liability of relatives to such amount as the court may have ordered. Conceding that this subparagraph may not prevent the Commonwealth from proceeding for past support, it would be exceedingly unfair to permit the Commonwealth to allow arrearages to run in any specific case rather than to petition for the fixing of a relative's liability".

Thus, the court concluded that the action may be brought for reimbursement either by action of assumpsit or petition; nonetheless, an injustice is worked if the Commonwealth permits a large arrearage to accrue and then attempts to collect it in an action of assumpsit rather, inferentially, than proceeding by petition in the first instance at the time of the admission and have a court order set for support based upon the ability of the relative to pay. To the same effect is Weaver's Estate, 11 D. & C. 2d 597 (1957).

Thus, we conclude the action must be dismissed

with a right of the Commonwealth to amend in accordance with the Act of June 1, 1915, P. L. 661, to pursue its remedy against decedent, Henry Fleckenstein Estate, or if the Commonwealth deems appropriate on any contractural obligation against defendant, Harriet B. Fleckenstein, to reimburse the Commonwealth for maintenance and support of her deceased husband for the period he was an inmate at Warren State Hospital.

For the foregoing reasons, we make the following order:

## ORDER

And now, March 19, 1974, the preliminary objections are treated as a motion for judgment on the pleadings and, as such, plaintiff's complaint is dismissed with leave to amend in accordance with the foregoing opinion.

Exceptions to the Commonwealth.